UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DONNA RAMOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-240-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. § 405(g), Plaintiff Donna Ramos seeks judicial review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings.  Pursuant to the Order transferring the case, the undersigned now files this Report and Recommendation.

On August 30, 2011, Ramos and a vocational expert testified at a hearing before an administrative law judge (ALJ).  Ramos was represented by counsel at the hearing.  The ALJ determined on September 23, 2011, that Ramos was not disabled because she was capable of making a successful transition to other work that exists in significant numbers in the national economy.  The Appeals Council denied Ramos's request for review on October 23, 2012.  Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review.  *Sims v. Apfel*, 530 U.S. 103, 107, 120 S. Ct. 2080, 147 L. Ed. 2d 80

(2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a request for review; therefore, evidence submitted for the first time to the Appeals Council becomes part of the record reviewable on appeal).

## Factual Background

Ramos claims she became disabled at age 49 on November 29, 2007, due to neck problems, back problems, and bilateral knee replacements. (Tr. 49, 99.) Ramos has undergone the following surgeries in the past eight years: neck surgery, back surgery, knee replacements on both knees, right shoulder surgery, and left hand carpal tunnel surgery. (Tr. 38, 349, 381.)

Ramos has a tenth grade education. (Tr. 42.) She is 5 feet, 3 inches tall, and she weighs 221 pounds. (Tr. 33.) At her last job, she worked as a meat cook in a school cafeteria, and she has previously worked as a commercial housekeeper, commercial laundry worker, clerk at a bakery, and grocery sacker. (Tr. 30, 117, 123.) She is right-handed. (Tr. 136.)

## Standard of Review

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2013); *see e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Without reweighing the evidence or substituting its own judgment, a reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v.*

*Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If the Commissioner's findings are supporting by substantial evidence, they are treated as conclusive and will be affirmed.  *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

## Discussion

Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2013).  In making a disability determination, the Commissioner conducts a five-step sequential evaluation process to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) whether the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is cable of performing any other work.  *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 404.1520(a)(4) (2013).  If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

At the first four steps in the analysis, the claimant bears the burden of proof.  *Id.*  Once this burden is satisfied, the Commissioner bears the burden of showing the claimant is capable of performing other work that exists in significant numbers in the national economy.  *Id.*  After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding.  *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

After performing the five-step analysis, the ALJ in this case issued an unfavorable decision,

finding that Ramos was not disabled because she had the residual functional capacity to perform a restricted range of light work, and she was capable of making a successful adjustment to other work that exists in the national economy.  (Tr. 18, 22.)  Ramos argues the ALJ erred by: (1) failing to consider the combined impact of her impairments; (2) improperly discounting her complaints of pain; and (3) failing to consider the effects of her obesity.

I.     The ALJ properly evaluated the combination of Ramos's impairments

Ramos alleges the ALJ did not properly evaluate the combined effect of her impairments. When making a disability determination, the ALJ must analyze not only each impairment individually, but also the cumulative impact of all impairments together.  *See e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987).  In this case, the ALJ considered Ramos's testimony, the medical records of treating and non-treating physicians, and other reports made by Ramos regarding her impairments.  *See* 20 C.F.R. § 404.1523.  "After careful consideration of the entire record," the ALJ found at step two that Ramos's impairments—status post bilateral knee replacement, low back pain with history of back surgery, history of neck surgery, and right shoulder tendinitis—are severe, "*in combination* if not singly."  (Tr. 16.) (emphasis added).

Specifically, the ALJ considered Ramos's combination of impairments when reviewing the medical records related to Ramos's prior surgeries.  Although the ALJ has the sole responsibility for determining disability status, medical evidence from treating physicians familiar with the claimant's impairments are accorded great weight.  *See*, *e.g.*, *Newton*, 209 F.3d at 455.  Ramos's medical records indicate she has undergone: microdiskectomy of the lumbar spine at L5-S1; anterior cervical diskectomy and fusion (ACDF) of the cervical spine at C5-6 and C6-7; bilateral knee replacements; repair of a torn right shoulder rotator cuff; and left hand carpal tunnel surgery.  (Tr.

182, 188, 245, 252, 349, 381.)  Consistent with the ALJ's findings, a review of the medical records indicates the surgeries were generally successful in alleviating Ramos's symptoms.  (Tr. 19.)  Six weeks after her lumbar microdiskectomy in 2005, Albert Telfeian, M.D., noted that Ramos was symptom free and she declined physical therapy.  (Tr. 250.)  Similarly, six weeks after her cervical spine ACDF in 2007, Ramos reported her pain had significantly improved.  (Tr. 241.)

Three months after her ACDF, Ramos's arm pain was completely resolved, but she complained of pain in her left leg.  (Tr. 238.)  In 2008, Ramos underwent a total left knee replacement, and three months post-surgery she reported sixty percent improvement from a pain and a function standpoint.  (Tr. 289.)  Six months after her left knee replacement surgery, Ramos said she had no pain, just occasional soreness at the end of a long day.  (Tr. 288.)  One year later Ramos had no complaints about her left knee, but she complained to Jeff Headrick, M.D., about pain in her right knee.  (Tr. 287.)  In his decision to perform a right knee replacement, Dr. Headrick noted Ramos had done well with the prior left knee replacement.  (Tr. 192.)  Two weeks after Ramos's right knee replacement in 2009, Ramos reported she was doing very well; was able to walk without an assistive device; and complained only of right ankle pain and swelling.  (Tr. 274.)  Ramos, however, had no complaints at the six-month follow-up appointment.  (Tr. 271.)  The ALJ's thorough description of Ramos's medical history indicates he considered Ramos's combination of impairments.  (Tr. 19–20.)

At the hearing before the ALJ in August 2011, Ramos complained of pain in her neck and shoulders and tingling in her left hand.  (Tr. 39–40.)  After the date of the hearing, Mark Nordyke, M.D., diagnosed Ramos with a torn right shoulder rotator cuff and performed surgery near the end of September 2011.  (Tr. 349.)  Approximately two months after the surgery on her right shoulder,

Ramos denied any pain while in the doctor's office. (Tr. 368.) Dr. Nordyke transitioned Ramos to a fitness program and cautioned her only with concern to lifting or reaching. (Tr. 371.) In regard to Ramos's complaints of tingling in her left hand, Ramos's general practitioner, Kevin Stennett, M.D., noted in his records in August 2012 that Ramos underwent carpal tunnel surgery six weeks prior, and "she continues to have some tingling in her fingers, but this is feeling better." (Tr. 381.)

The ALJ considered each of Ramos's impairments individually as well as her combination of impairments before making his determinations based on the evidence as a whole. *See Hajek v. Shalala*, 30 F.3d 92, 92 (8th Cir. 1994) (rejecting claimant's conclusory argument that the ALJ failed to consider the combined effects of his impairments because the ALJ expressly referenced the claimant's combination of impairments at step three, stated that he considered "the evidence as a whole," and used other similar language in his opinion). For the above reasons, the record does not support Ramos's claim that the ALJ failed to evaluate the combination of her impairments.

II.   Substantial evidence supports the ALJ's credibility determination regarding Ramos's subjective complaints of pain

Ramos further asserts the ALJ failed to make adequate credibility findings regarding her subjective complaints of pain. When making a disability determination, the ALJ "must consider subjective evidence of nonexertional ailments, such as pain, which may have a disabling effect." *E.g.*, *James v. Bowen*, 793 F.2d 702, 705 (5th Cir. 1986). The ALJ may not reject a claimant's statements of pain and other symptoms solely because the symptoms are not fully substantiated by the objective record. *See* 20 C.F.R. § 404.1529. Rather, the ALJ must make a credibility determination based on the entire record. *See Villa*, 895 F.2d at 1022.

Viewed as a whole, the record does not support Ramos's claim that the ALJ improperly discounted her complaints of pain. The ALJ considered Ramos's subjective complaints when he

determined that her claims of disabling symptoms, although related to medically determinable physical impairments, were not strongly supported by the objective evidence.  (Tr. 19.)  The ALJ acknowledged Ramos's reports of pain in her back, knees, and right arm and shoulder, which all allegedly affect her ability to engage in activities such as sitting, standing, and walking.  (Tr. 18.) The ALJ noted Ramos testified that she could only walk for fifteen minutes or stand for fifteen to twenty minutes before her back would begin to hurt.  (Tr. 18, 31, 33.)  A finding of pain, however, does not automatically entitle one to disability benefits.  *Hames*, 707 F.2d at 166.  Pain is a disabling condition only where it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.*  Under the test for disability, a claimant must demonstrate functional impairments that prevent her from participating in substantial gainful activity; a mere showing of the inability to work without some pain or discomfort does not qualify.  *Id.*

The ALJ further found that Ramos's allegations conflicted with the consultative examination conducted by Dr. Yasir Yaqub, M.D.  (Tr. 19.)  A claimant's subjective allegations of pain "will not take precedence over conflicting medical evidence."  *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  Dr. Yaqub reported that although Ramos was unable to squat or rise from a squatting position, she could be expected to sit, stand, and walk for six hours at a time in an eight-hour workday with extended breaks.  (Tr. 225.)  The ALJ properly relied on Dr. Yaqub's report that Ramos's range of motion, while somewhat decreased in her lumbosacral area and knees, was within normal limits in all other areas including "cervical, elbows, shoulders, wrists, hands, hips and ankles/feet."  (Tr. 19, 224.)  Dr. Yaqub reported Ramos does not need an assistive device to walk; has no manipulative limitations on handling or grasping; and has no relevant visual, communicative, or work place environmental limitations.  (Tr. 225.)  Dr. Yaqub's findings were confirmed in

Ramos's Residual Functional Capacity Assessment conducted by Jimmy Breazeale, M.D.  (Tr. 228–36.)

Also considered by the ALJ were the medications and course of treatment Ramos underwent. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (holding that the ALJ had the discretion to discount claimant's subjective complaints of pain after considering claimant's medical records, activities, and use of only a non-aspirin pain reliever).  Here, the ALJ considered Ramos conservative use of over-the-counter pain medication and her reports that excedrin and ibuprofen improved her symptoms of pain.  (Tr. 20, 221.)  Rather than prescribing narcotic-based pain relievers, Dr. Stennett recommended that Ramos decrease her use of over-the-counter pain medication. (Tr. 312.)  If surgery, medication, therapy, or other treatment can reasonably remedy or control an existing impairment, the impairment cannot serve as the basis for a finding of disability.  *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

In addition, the ALJ found that Ramos's described daily activities were not limited to the extent expected given her complaints of disabling pain. (Tr. 20.)  Ramos reported that she can walk about three blocks; independently take care of her grooming needs; and perform chores such as laundry, dishes, making beds, vacuuming, mopping, and sweeping. (Tr. 132, 133, 136.) Ramos also reported that she takes care of her granddaughter, including feeding and bathing her. (Tr. 132.)  The ALJ acknowledged Ramos assertions of fatigue and pain after extended work; however, the  "mere presence of some impairment is not disabling per se."  *See Hames*, 707 F.2d at 165 (finding plaintiff failed to establish her back pain imposed restrictions of disabling severity).  A plaintiff must prove that her functional impairments preclude her from performing any substantial gainful activity; "individuals capable of performing even light or sedentary work, despite back trouble, are not

disabled under the Act." *Id.*

In this case, substantial evidence supports the ALJ's finding that Ramos can perform a restricted range of light work despite her pain. *See* 20 C.F.R. § 404.1567(b) (defining "light work"). The ALJ limited the range of light work by enumerating that Ramos needed a sit/stand option and was limited to only occasional climbing, stooping, kneeling, crouching, crawling, and overhead work. (Tr. 18.)  The ALJ based his determination on Ramos's testimony and medical reports detailing her condition. *See James*, 793 F.2d at 706 (claimant's testimony coupled with the medical reports supported the ALJ's decision that subjective ailments were not disabling). For these reasons, the ALJ properly found Ramos failed to meet her burden of proving a disability that altogether prevents her from working.  *See Hames*, 707 F.2d at 166 (holding no objective medical evidence supported Plaintiff's claims of disabling back pain).

III.     The ALJ properly considered Ramos's obesity

Finally, Ramos claims the ALJ failed to consider the effect of her obesity.  Social Security regulations indicate obesity is considered a "medically determinable impairment," and any functional limitations resulting from obesity should be considered when assessing disability. *See* SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002).

Ramos did not specifically allege that obesity limited her ability to work.  In her medical consultation with Dr. Yaqub, she alleged disability due only to low back, neck, and bilateral knee pain. (Tr. 221.) The record indicates, however, the ALJ considered Ramos's obesity in his findings when he discussed Ramos's medical evidence. (Tr. 18–20.) The ALJ acknowledged Ramos's allegations that walking and standing for prolonged periods of time contribute to fatigue and pain in her back and knees. (Tr. 18.)  The ALJ also noted in his decision that Ramos's doctor

9

recommended weight loss to improve her discomfort and range of motion.  (Tr. 20.)  The records reveal Dr. Headrick recommended weight loss to relieve Ramos's complaints of back discomfort in a follow-up appointment one year and six months after her right knee replacement surgery.  (Tr. 270.)  Dr. Headrick, however, did not consider Ramos's complaints of pain severe enough to prescribe more intensive treatment other than weight loss.  *Id.*

The ALJ further found that Ramos visited medical providers fairly infrequently outside of post-surgical follow-up appointments.  (Tr. 20.)  After the hearing before the ALJ, Ramos's visits increased somewhat.  From April 2011 to August 2012, Ramos visited Dr. Stennett about once a month, complaining mainly of anxiety, gastritis, hypertension, and periodic right shoulder discomfort.  (Tr. 310.)  When Ramos visited Dr. Stennett in April 2011, Dr. Stennett noted Ramos weighed 242 pounds and had gained about 40 pounds since her last visit three years prior.  (Tr. 311.)  At the hearing before the ALJ approximately four months later in August 2011, Ramos stated that she had lost 27 pounds since she began seeing Dr. Stennett, and she weighed 221 pounds on that date.  (Tr. 32–33.)  The ALJ thus considered her previous weight, her weight at the hearing, and her loss of over 20 pounds in four months.  *Id.*

## Conclusion

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Ramos's Complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific

finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated:          September 20, 2013.

NANCY M. KOENIG
United States Magistrate Judge

11